(31)

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

FILED

SEP 2 9 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:                              )
                                    )
DELANO RETAIL PARTNERS, LLC,        )   Case No. 11-37711-B-7
                                    )
          Debtor.                   )   Chapter 7.
_____  )
                                    )
                                    )   FILED
C&S WHOLESALE GROCERS, INC.,        )
                                    )   Sep 29, 2014
          Plaintiff.                )   CLERK, U.S. DISTRICT COURT
                                    )   EASTERN DISTRICT OF CALIFORNIA
                                    )
vs.                                 )   District Court No. 2:14-cv-2263 TLN
                                    )
                                    )   Adv. Pro. No. 13-2250-B
HARLEY, DELANO, et al.,             )
                                    )   REPORT AND RECOMMENDATION
          Defendants.               )
                                    )
_____  )
                                    )

     This matter was deemed submitted on June 10, 2014.  The

following constitutes the court's proposed findings of fact and

conclusions of law, pursuant to 28 U.S.C. § 157(c)(1) and Federal

Rule of Bankruptcy Procedure 7052.


**I. BACKGROUND**


     Before the court is a motion for summary judgment filed by

defendant Joseph Neri ("Neri").  The subject matter of this

litigation is a transaction between the debtor and an entity

known as 2040 Fairfax, Inc. ("2040 FF") which occurred in and

around December 2008 and the effects of that transaction on the

- 1 -

debtor's financial condition.   Individual defendants Harley
Delano and Dennis Delano were the sole members of the debtor and
the sole shareholders of 2040 FF.   Prior to the transaction, the
debtor leased a property located at 2040 Sir Francis Drake
Boulevard, Fairfax, California (the "Fairfax Store"), at which
the debtor operated a grocery store.   The store was one of
several owned and operated by the debtor at that time.   In and
around December 2008 the debtor entered into a transaction
pursuant to which the debtor transferred assets to 2040 FF,
including the debtor's leasehold interest in the Fairfax Store.
Neri, as attorney for the debtor and 2040 FF, drafted the legal
documents which effectuated the transaction.   Two years later in
late 2010 the debtor deposited $560,000.00 to Neri's attorney
trust account and entered into an attorney-client fee agreement
with Neri which included a provision for a $500,000.00 retainer.

The plaintiff C&S Wholesale Grocers, Inc. alleges in the
first amended complaint filed on December 23, 2013 (Dkt. 97)(the
"FAC") that the transaction between the debtor and 2040 FF and
the later transfer of funds to Neri were designed and carried out
by defendants as a means of transferring assets of the debtor to
2040 FF so as to put them beyond the reach of the debtor's
creditors, including the plaintiff.   The plaintiff alleges that
these transfers were fraudulent.   The plaintiff also alleges that
Neri and the Delanos breached fiduciary duties owed to the
debtor, that Neri committed legal malpractice in his
representation of the debtor and that the Delanos and Neri

-2-

converted the debtor's assets.  This motion is brought by Neri
for summary judgment on the plaintiff's claims against Neri.  The
FAC alleges the following specific claims for relief against
Neri:

      1.)  Avoidance and recovery of intentional fraudulent
      transfer, 11 U.S.C. § 548.

      2.)  Avoidance and recovery of constructive fraudulent
      transfer, 11 U.S.C. § 548.

      3.)  Avoidance and recovery of intentional fraudulent
      transfer, Cal. Civ. Code § 3439.04(a)(1).

      4.)  Avoidance and recovery of constructive fraudulent
      transfer, Cal. Civ. Code §§ 3439.04(a)(2), 3439.05

      5.)  Breach of Fiduciary Duty

      6.)  Legal Malpractice

      7.)  Conversion

    The plaintiff brings these claims as an assignee of the
chapter 7 trustee, having reached a court-approved agreement with
the chapter 7 trustee in the parent bankruptcy case to prosecute
the claims on behalf of the bankruptcy estate.  Of the foregoing
claims, the claims for avoidance of fraudulent transfer are
"core" claims which arise under the Bankruptcy Code pursuant to
11 U.S.C. §§ 544(b) and 548, and the court may make a final
determination of those claims.  The claims for breach of
fiduciary duty, legal malpractice and conversion are "non-core"

1   or "related to" claims which are before the court by way of
2   supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), and of
3   which the court lacks constitutional authority to make a final
4   determination.  The court makes this report and recommendation
5   because it is recommending a final determination as to the
6   plaintiff's non-core claim of conversion against Neri.

7       For the reasons set forth herein, the motion should be
8   granted in part so that moving defendant Joseph Neri ("Neri")
9   shall have summary judgment that the plaintiff shall take nothing
10  by its claim for relief for conversion against Neri.  Neri's
11  request for summary judgment in his favor on the plaintiff's
12  other claims should be denied.

13

14  **II. ANALYSIS**

15

16  A.)  Summary Judgment Standard

17

18      Fed. R. Bankr. P. 7056, incorporating Fed. R. Civ. P. 56,
19  provides that the court shall grant summary judgment if the
20  movant shows that there is no genuine dispute as to any material
21  fact and the movant is entitled to judgment as a matter of law.
22  The burden of proof on a motion for summary judgment is linked to
23  the burdens of the respective parties at trial:

24

25      The moving party initially bears the burden of proving
26      the absence of a genuine issue of material fact.

27

28                                  -4-

_Celotex Corp. v. Catrett_, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. _Id._ at 325. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. _Id._ at 324. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmoving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. _Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp._, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. _Anderson_, 477 U.S. at 252. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor. _Id._ at 255.

_Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)_, 637 F.3d 376 (9th Cir. 2010).

## B.) In pari delicto defense

Neri first argues that the doctrine of <u>in pari delicto</u>, meaning, literally, "in equal fault" applies as a bar to all of the plaintiff's claims in this adversary proceeding.  Neri argues that the Delanos participated in the alleged wrongdoing that is the subject of this action and as the sole members of the debtor their actions are imputed to the debtor.  Neri argues that CSWG, standing in the position of the chapter 7 trustee, is subject to all defenses that Neri could raise against the debtor itself, and that the wrongful conduct imputed to the debtor bars recovery against Neri as another participant in the wrongful conduct.

The equitable defense of in pari delicto, which
literally means "in equal fault," is rooted in the
common-law notion that a plaintiff's recovery may be
barred by his own wrongful conduct.  [<u>Bateman Eichler,
Hill Richards, Inc. v. Berner</u>, 472 U.S. 299, 306
(1985)]  Traditionally, the defense was limited to
situations where the plaintiff bore "at least
substantially equal responsibility for his injury,"
<u>id.</u>, at 307, 105 S.Ct., at 2627, and where the parties'
culpability arose out of the same illegal act. 1 J.
Story, <u>Equity Jurisprudence</u> 399-400 (14th ed. 1918).
Contemporary courts have expanded the defense's
application to situations more closely analogous to

- 6 -

1    those encompassed by the "unclean hands" doctrine,

2    where the plaintiff has participated "in some of the

3    same sort of wrongdoing" as the defendant.  See Perma

4    Life Mufflers, Inc. v. International Parts Corp., 392

5    U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982

6    (1968).

7

8    Pinter v. Dahl, 486 U.S. 622 (1988).  The Supreme Count in Pinter

9    went on to note that the broadened construction of the doctrine

10   was not appropriate in litigation arising under federal

11   regulatory statutes, an issue not relevant to this adversary

12   proceeding.

13        CSWG does stand in the shoes of the chapter 7 trustee in

14   this matter, having reached an agreement with the trustee to

15   prosecute the claims asserted in this adversary proceeding on

16   behalf of the estate.  The issue arises as to whether a party

17   suing in the position of the trustee on behalf of the bankruptcy

18   estate is subject to the doctrine of in pari delicto.  This issue

19   has not been directly decided by the Ninth Circuit Court of

20   Appeals.  The most oft-cited case at the circuit level on the

21   issue of the applicability of the doctrine of in pari delicto to

22   actions prosecuted on behalf of an estate in bankruptcy is

23   Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.,

24   Inc., 267 F.3d 340 (3d. Cir. 2001), in which the Third Circuit

25   Court of Appeals held that a committee of unsecured creditors was

26   subject to the doctrine of in pari delicto with respect to claims

27

28                              -7-

to which the trustee succeeded under 11 U.S.C. § 541(a)(1):

> Under section 541, the bankruptcy estate includes "all
> legal or equitable interests of the debtor in property
> as of the commencement" of bankruptcy. 11 U.S.C. §
> 541(a) (emphasis added); see also O'Dowd v. Trueger,
> 233 F.3d 197, 202 (3d Cir.2000). These legal and
> equitable interests include causes of action. 3 Collier
> on Bankruptcy ¶ 323.02[1]; accord  O'Dowd, 233 F.3d at
> 202-03. Given these provisions, we have held that "in
> actions brought by the trustee as successor to the
> debtor's interest under section 541, the 'trustee
> stands in the shoes of the debtor and can only assert
> those causes of action possessed by the debtor.
> [Conversely,] [t]he trustee is, of course, subject to
> the same defenses as could have been asserted by the
> defendant had the action been instituted by the
> debtor.' " Hays & Co. v. Merrill Lynch, Pierce, Fenner
> & Smith, Inc., 885 F.2d 1149, 1154 (3d Cir.1989)
> (quoting Collier on Bankruptcy ¶ 323.02[4] ).

> As these authorities demonstrate, the explicit language
> of section 541 directs courts to evaluate defenses as
> they existed at the commencement of the bankruptcy.
> This direction is entirely consistent with the
> legislative history.

. . . .

The answer to our first question should now be
apparent. The Committee asks us to consider
post-petition events, namely, the removal of the
Shapiro family and their co-conspirators from the
Debtors' management, as well as the Committee's status
as an innocent successor, when weighing the equities of
the in pari delicto defense. The plain language of
section 541, however, prevents courts from taking into
account events that occur after the commencement of the
bankruptcy case. As a result, we must evaluate the in
pari delicto defense without regard to whether the
Committee is an innocent successor.

Lafferty, 267 F.3d at 356-57.  It is important to note, however,
that Lafferty addressed only the applicability of the defense to
claims to which the estate succeeded pursuant to 11 U.S.C. § 541.
Lafferty points out that it does not address claims brought by a
trustee under avoiding powers given to the trustee by the
Bankruptcy Code.  Id. at 356 (The trustee's "avoiding powers are
not implicated here...").  Two years after Lafferty, the Third
Circuit addressed the applicability of in pari delicto to a claim
for avoidance of fraudulent transfer pursuant to 11 U.S.C. § 548,
and concluded that in such a case a court could consider the
post-petition event of the appointment of a bankruptcy trustee

1  for the purposes of evaluating the doctrine in In re Personal and

2  Business Ins. Agency, 334 F.3d 239 (3d Cir. 2003)("PBI").   In

3  PBI, the Third Circuit concluded that the replacement of the

4  debtor's principal with the trustee as the individual with

5  control over the debtor rendered a defendant's assertion of in

6  pari delicto based on the principal's unlawful acts to be

7  inapplicable:

9      The Trustee argues that Lafferty cannot control our

10     decision here because the Committee in Lafferty brought

11     suit under § 541, which specifically bars consideration

12     of events that occurred after the commencement of the

13     bankruptcy, while the Trustee is bringing suit under §

14     548, which has no such language. This argument has

15     merit. The Lafferty Court made clear that its holding

16     did not extend to actions brought under Code sections

17     other than § 541, and it specifically stated that the

18     "trustee's 'avoiding' powers are not implicated here,

19     as they relate to the trustee's power to resist

20     pre-bankruptcy transfers of property."

22     .  .  .  .

24     We agree that "under Pennsylvania law equitable

25     defenses such as the doctrine of imputation that may be

26     sustainable against the corporation may fail to act as

28                              - 10 -

a total bar to recovery when the beneficiaries of the
action are the corporation's innocent creditors," and
find that the same logic applies to suits brought under
§ 548 of the Code, and we therefore conclude that we
may take the appointment of the Trustee into account
when evaluating his fraudulent conveyance claim.   There
is no limiting language in § 548 similar to that in §
541, and without that language there is no reason not
to follow the better rule, under which Kesselring's
conduct would not be imputed to the Trustee because it
would lead to an inequitable result in this case.

PBI, 334 F.3d at 245-47 (citations omitted).   Other courts have
extended PBI's analysis to include claims brought by a trustee
under the avoiding powers bestowed by 11 U.S.C. § 544.   See In re
Maui Indus. Loan & Finance Co., 454 B.R. 113, 136 ("The in pari
delicto defense is inapplicable when a trustee brings an action
under sections 544(b) and 548."); In re Norvergence, Inc., 405
B.R. 709, 742 (Bankr.D.N.J.2009); In re Fuzion Technologies
Group, Inc., 332 B.R. 225, 232 (Bankr.S.D.Fla.2005).

    Neri's argument that the doctrine of in pari delicto
operates as a complete bar to all of the plaintiff's claims is
not persuasive.   In this action the plaintiff, standing in the
shoes of the chapter 7 trustee, alleges claims for avoidance of a
fraudulent transfer of $560,000.00 from the debtor to Neri under
11 U.S.C. § 548(a)(1)(A) and (a)(1)(B).   For the reasons stated

- 11 -

in <u>PBI</u>, in pari delicto is not a defense to those claims.  Neri
cannot use alleged participation in wrongdoing by the Delanos as
a defense because the Delanos were replaced by the chapter 7
trustee, in whose shoes the plaintiff now stands.

The plaintiff also alleges claims for avoidance of
fraudulent transfer of $560,000.00 from the debtor to Neri
pursuant to Cal. Civ. Code §§ 3439.04(a)(1) and (a)(2) and
3439.05.  California law allows claims under Cal. Civ. Code §§
3409.04 and 3439.05 to be asserted by creditors who seek to avoid
fraudulent transfers by debtors to third parties.  A trustee in
bankruptcy has standing to bring claims under Cal. Civ. Code §§
3439.04 and 3439.05 by virtue of 11 U.S.C. § 544(b), which gives
the trustee the power to avoid any transfer of an interest of the
debtor in property that is voidable under applicable law by a
creditor holding an unsecured claim that is allowable under 11
U.S.C. § 502.  As with the plaintiff's claims under 11 U.S.C. §
548, in pari delicto is not applicable as a defense to the
trustee's claims under Cal. Civ. Code § 3439.04 and 3439.05.
Neri cannot use alleged participation in wrongdoing by the
Delanos as a defense because the Delanos were replaced by the
chapter 7 trustee, in whose shoes the plaintiff now stands.

This leaves, however, claims remaining in the FAC which are
not based on trustee avoiding powers under the Bankruptcy Code
and are instead state law claims to which the estate succeeded
pursuant to 11 U.S.C. § 541.  Those claims include breach of
fiduciary duty, legal malpractice and conversion.  The defense of

- 12 -

1  in pari delicto is potentially applicable to those claims.

2      California law treats the in pari delicto doctrine as part

3  of the doctrine of "unclean hands."

4

5      "The [unclean hands] doctrine demands that a plaintiff

6      act fairly in the matter for which he seeks a remedy.

7      He must come into court with clean hands ... or he will

8      be denied relief, regardless of the merits of his

9      claim." ( Kendall-Jackson Winery, Ltd. v. Superior

10     Court (1999) 76 Cal.App.4th 970, 978, 90 Cal.Rptr.2d

11     743.) "The doctrine of unclean hands requires

12     unconscionable, bad faith, or inequitable conduct by

13     the plaintiff in connection with the matter in

14     controversy. [Citations.] Unclean hands applies when it

15     would be inequitable to provide the plaintiff any

16     relief, and provides a complete defense to both legal

17     and equitable causes of action." ( Fladeboe v. American

18     Isuzu Motors, Inc. (2007) 150 Cal.App.4th 42, 56, 58

19     Cal.Rptr.3d 225.) The plaintiff's misconduct must be of

20     such a prejudicial nature that it would be unfair to

21     grant him the relief he seeks in court. ( Soon v.

22     Beckman (1965) 234 Cal.App.2d 33, 36, 44 Cal.Rptr.

23     190.) "Whether the defense applies in particular

24     circumstances depends on the analogous case law, the

25     nature of the misconduct, and the relationship of the

26     misconduct to the claimed injuries. [Citation.]" (

27

28                          - 13 -

Dickson, Carlson & Campillo v. Pole (2000) 83
Cal.App.4th 436, 447, 99 Cal.Rptr.2d 678.) The defense
applies only "where it would be inequitable to grant
the plaintiff any relief." ( Ibid.) "The decision of
whether to apply the defense based on the facts is a
matter within the trial court's discretion." ( Ibid.)

Bank of America, N.A. v. Roberts, 217 Cal.App.4th 1386, 1400
(2013).

The defense may be invoked against a corporate plaintiff if
under California law one or more agents of the plaintiff
participated in the wrongful conduct and the conduct may be
imputed to the corporation.  The exception to the foregoing is
the case where the action of the agent was adverse to the
interest of the corporation, called the "adverse interest"
exception.  See, e.g., Bankruptcy Services, Inc. v. Ernst &
Young (In re CBI Holding Co.), 247 B.R. 341, 365
(Bankr.S.D.N.Y.2000).  There is a further exception to the
adverse interest exception called the "sole actor" exception
under which the actions of the corporation's agent may be imputed
to the corporation even if the agent acts adversely to the
interest of the corporation, if the agent and the corporation are
"one and the same."  See, e.g., Lafferty, 267 F.3d at 359.

"As a general rule, application of the unclean hands
doctrine remains primarily a question of fact. . . . As such, it
is not properly determined either on a summary judgment motion or

- 14 -

1  by reference to collateral estoppel principles." <u>Mattco Forge,</u>
2  <u>Inc. v. Arthur Young & Co.</u>, 5 Cal.App.4th 392, 407-08 (1992).
3  This is because the doctrine relies heavily on an examination of
4  intent of the plaintiff and the relative culpability of the
5  parties.  <u>See</u> <u>Blain v. Doctor's Co.</u>, 222 Cal.App.3d 1048, 1060-62
6  (1990).

7      The doctrine of unclean hands is an affirmative defense.  At
8  trial, "the defendant generally bears the burden of proving its
9  affirmative defenses." <u>Peregrine Funding, Inc. v. Sheppard</u>
10  <u>Mullin Richter & Hampton LLP</u>, 133 Cal.App.4th 658 (2005).
11  Therefore, for the purposes of summary judgment, Neri bears the
12  initial burden of showing that the elements of his defense are
13  present, after which the burden shifts to the plaintiff to show
14  that there is a dispute of material fact as to one or more of the
15  elements of the defense.

16      In this case, the element over which the parties argue is
17  that of unconscionable, bad faith or inequitable conduct by the
18  Delanos.  Neri's reply states that the evidence in support of
19  this element consists of allegations made by plaintiff in the FAC
20  which state that the Delanos , together with Neri, conspired
21  together and orchestrated a scheme by which the debtor
22  transferred assets to 2040 FF, to the detriment of the debtor and
23  for the benefit of themselves and 2040 FF and for the purpose of
24  delaying, hindering or defrauding the interests of the debtor's
25  creditors.  Neri argues that these allegations are admissible
26  evidence and may serve as the basis for summary judgment because
27
28                              - 15 -

1  the allegations state that Neri and the Delanos engaged in
2  equally culpable bad faith conduct.

3      In response, the plaintiff has shown evidence which shows a
4  dispute of material fact regarding the Delanos' culpability
5  relative to Neri.  It is for that reason that the court will not
6  grant Neri summary judgment on the plaintiff's claims for breach
7  of fiduciary duty, legal malpractice and conversion based on his
8  assertion of the in pari delicto defense.

9      The court finds that there is a material dispute of fact
10  regarding the degree to which the Delanos engaged in bad faith
11  conduct equally culpable to Neri's conduct.  Specifically, the
12  plaintiff has presented evidence in the form of deposition of
13  testimony of Harley Delano and Dennis Delano that they asked Neri
14  to make sure that a new lease of the Fairfax Store under which a
15  new entity called 2040 Fairfax, Inc. ("2040 FF") would act as
16  tenant in place of the debtor would be done "legally and
17  properly" and that they did not have any intention to harm DRP in
18  connection with the transaction and that Neri proposed to them
19  scenarios which included a transfer of assets between the debtor
20  and 2040 FF.  Neri does not dispute that DRP and the Delanos
21  relied on him for legal advice.  The plaintiff has also presented
22  evidence in the form of deposition testimony of Neri in which
23  Neri states that he never considered whether the Delanos owed
24  fiduciary duties to the debtor, he was not familiar with the
25  fiduciary duties of members of an LLC, and that he did not advise
26  the Delanos or the debtor to obtain an independent manager or

27

28                            - 16 -

attorney to review the transaction between the debtor and 2040
FF.   The court finds that based on this evidence a fact finder or
jury could reasonably render a verdict in the plaintiff's favor
on the issue of Neri's unclean hands defense.   Therefore, there
is a dispute of material fact on the issue of the relative
culpability of the Delanos and Neri which precludes summary
judgment.

To the extent that Neri argues that the plaintiff should be
estopped from arguing in oppositon to this motion that there is a
dispute of material fact regarding the Delano's intent and their
culpability relative to Neri because it contradicts the
plaintiff's allegations in the FAC, the argument is not
persuasive.   The doctrine of judicial estoppel requires a party
to have previously prevailed on a prior inconsistent position.
New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001).   Neri shows
no evidence that the plaintiff has previously prevailed on the
prior allegedly inconsistent position.

Based on the foregoing, Neri is not entitled to summary
judgment that the defense of in pari delicto bars all of the
plaintiff's claims against him.

Having determined that the defense of in pari delicto is not
a complete bar to the plaintiff's claims, the court now turns to
his arguments regarding the individual claims alleged against him
in the FAC.

**C.)   Fraudulent transfer claims under 11 U.S.C. § 548 and Cal. Civ. Code §§ 3439.04 and 3439.05**

Neri argues that he is entitled to summary judgment on the plaintiff's claims for avoidance of fraudulent transfer pursuant to 11 U.S.C. § 548 and Cal. Civ. Code §§ 3439.04 and 3439.05 because there is no dispute of material fact that he was not an "initial transferee," as that term is used for the purposes of 11 U.S.C. § 550(a), of the $560,000.00 transferred from the debtor to Neri's attorney trust account in late 2010.

11 U.S.C. § 550(a) provides that to the extent that a transfer is avoided under 11 U.S.C. §§ 544 or 548, the trustee may recover "the property transferred, or, if the court so orders, the value of such property from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1)(emphasis added).   The plain language of the statue does not require that the initial transferee benefit from the transfer.

In the Ninth Circuit, an initial transferee is one who has "dominion" over the money. In re Incomnet, Inc., 463 F.3d 1064, 1069-70 (9th Cir.2006). One who has dominion has the "legal authority over the money and the right to use the money however [one] wishe[s]." Id. at 1070.

Neri presents evidence in the form of his declaration (Dkt. 140), the declaration of Harley Delano (Dkt. 141) and the declaration of Dennis Delano (Dkt. 160) in which each states that

- 18 -

1  in late 2010 the Delanos authorized the debtor to make a series
2  of deposits totaling $560,000.00 into Neri's attorney trust
3  account.  The Delanos and Neri each state that the debtor
4  maintained complete control over the use of the funds while they
5  were in Neri's trust account and Neri did not establish dominion
6  over the funds or mismanage them in any way.  Neri also argues
7  that of the $560,000.00 transferred to him, all of the funds were
8  subsequently transferred to other parties "entirely in accordance
9  with [the debtor's] own wishes" including a transfer of
10 $384,000.00 to the chapter 7 trustee and $116,000.00 to pay
11 another attorney to represent the debtor in state court
12 litigation.

13      The burden shifts to the plaintiff to show evidence that
14 raises a dispute of material fact as to whether Neri had dominion
15 over the transferred funds.  The plaintiff points to an Attorney-
16 Client Fee Agreement between Neri and the debtor, dated January
17 21, 2011, which is filed as Exhibit G to the FAC and identified
18 in paragraph 45 of the FAC.  The Attorney-Client Fee Agreement is
19 also filed as Pursuant to the fee agreement, the debtor agreed to
20 pay Neri $500,000.00 as a retainer and authorized Neri to deduct
21 his own hourly billings against the retainer and authorized him
22 to "utilize . . . the Retainer to pay co-counsel based on co-
23 counsel's written Attorney-Client Agreement with [the debtor]."
24 The plaintiff has also submitted evidence in the form of Neri's
25 deposition testimony, wherein Neri states that he had not
26 previously had any retainer agreement with the debtor during the
27
28                              - 19 -

time that the debtor was his client.  The plaintiff also submits
the declaration of John V. Marklin, who served as a financial
consultant for the plaintiff from 2005 to 2012.  He states that
in November 2010 several grocery stores operated by the debtor
throughout the San Francisco Bay Area were suffering substantial
losses of revenue and were expected to close.  He states that the
plaintiff requested that he oversee liquidation sales at the
stores and he understood that the debtor had agreed to use the
proceeds of the liquidation to pay the debtor's creditors,
including the plaintiff.  He states that he learned of the
transfer of $560,000.00 of the proceeds of the liquidation sales
to Neri's attorney trust account on or about December 21, 2010,
after the transfer had already occurred.  He also states that
Neri wrote to him to make it clear that Marklin was only to
contact Neri regarding the funds in the trust account and that no
representative of the debtor would respond to requests from
Marklin.

Neri argues that Marklin's declaration should be stricken in
its entirety because Marklin has not been previously disclosed by
the plaintiff as a witness, pursuant to Fed. R. Civ. P. 37(c)(1).
Neri's request is denied.  Pursuant to Fed. R. Civ. P. 7037,
incorporating Fed. R. Civ. P. 37(c)(1), a party who fails to
provide information or identify a witness as required by Fed. R.
Civ. P. 26(a) or (e) is not allowed to use that information or
witness to supply evidence on a motion, at a hearing or at a
trial unless the failure was substantially justified or is

- 20 -

harmless.  Additionally, Fed R. Bankr. P. 9013 requires that a request for an order, such as a request for an order striking Marklin's declaration, be made by motion.  Given the nature of the relief sought, such a motion would be a contested matter under Fed. R. Bankr. P. 9014.  Neri's request that Marklin's declaration be stricken, set forth in his reply to the plaintiff's opposition, does not satisfy the requirement that a request to strike be made by motion.

The court finds that the plaintiff has shown evidence sufficient to establish a dispute of material fact regarding Neri's dominion over the $560,000.00 transferred to his attorney trust account.  The plaintiff has shown evidence that the circumstances surrounding the transfer, including execution of a retainer agreement which provided for a $500,000.00 retainer which Neri was allowed to utilize to pay himself and co-counsel when he had previously had no retainer agreement with the debtor, and Neri's response to Marklin's inquiry that no representative of the debtor would respond to requests regarding the funds could lead a reasonable finder of fact to conclude that Neri was more than a mere conduit for the funds and exercised dominion over the funds.  The fact that some of the funds may have been subsequently transferred to other parties does not eliminate a dispute of material fact over whether Neri exercised dominion over the funds at the time that the transfer was made.

1

2   **D.)   Breach of fiduciary duty.**

3

4       The elements of a cause of action for breach of

5       fiduciary duty are: (1) the existence of a fiduciary

6       duty; (2) breach of the fiduciary duty; and (3) damage

7       proximately caused by the breach.

8

9   Stanley v. Richmond, 35 Cal.App.4th 1070, 1086 (1995).

10       The FAC alleges that Neri, as the debtor's attorney, owed

11   fiduciary duties to the debtor including a duty of loyalty and a

12   duty of care.  The FAC alleges that Neri violated these duties by

13   deliberately participating in a scheme to transfer an asset

14   belonging to the debtor to 2040 FF and to impose obligations on

15   the debtor for the benefit of 2040 FF without consideration and

16   by transferring funds from the debtor to Neri.  The FAC also

17   alleges that Neri violated his duty of due care to the debtor by

18   failing to make written disclosure to the debtor of his

19   simultaneous representation of both the debtor and 2040 FF, by

20   failing to obtain the debtor's written consent to the

21   simultaneous representation, by accepting employment adverse to

22   the debtor, by disclosing confidential and privileged information

23   belonging to the debtor, by failing to disclose to the debtor

24   that he did not have professional liability insurance, by failing

25   to execute a written fee agreement with the debtor at the time he

26   began to serve as the debtor's attorney in 2006 and by charging

27

28                              - 22 -

1 an "unconscionable" retainer of $500,000.00 when he did enter

2 into a written fee agreement with the debtor in January, 2011.

3       Neri argues that the plaintiff cannot show evidence to prove

4 causation of damages.  In support, he submits the declarations of

5 Harley Delano (Dkt. 141) and Dennis Delano (Dkt. 160) who each

6 state that even if Neri had disclosed to the debtor and the

7 Delanos the alleged conflict in his representation of the debtor

8 and 2040 FF, had provided a written fee agreement and had

9 disclosed that he did not have professional liability insurance

10 that they would have done nothing differently and still would

11 have retained him as counsel for the debtor.  Both Delanos also

12 state in their declarations that at no time did Neri make any

13 business decisions on behalf of the debtor or 2040 FF.

14       The burden shifts to the plaintiff to show a dispute of

15 material fact.  With respect to Neri's failure to make various

16 disclosures regarding simultaneous representation his lack of

17 liability insurance and the absence of a written fee agreement

18 the plaintiff presents no evidence to show that if these

19 disclosures had been made and a written fee agreement provided

20 that the debtor, through the Delanos, would have taken any other

21 action.  On this aspect of the plaintiff's claim for breach of

22 fiduciary duty, the plaintiff has not carried its burden.

23       However, the substance of the plaintiff's claim for breach

24 of fiduciary duty does not solely concern Neri's failure to make

25 disclosures or provide a written fee agreement.  The plaintiff

26 also accuses Neri of violating a duty of loyalty and care to the

27

28                                  - 23 -

debtor by participating in a scheme to transfer assets of the
debtor to 2040 FF without consideration.  On that aspect of the
plaintiff's claim for breach of fiduciary duty, the court finds
that the plaintiff has submitted sufficient evidence to create a
dispute of material fact.  Specifically, the plaintiff has
presented evidence in the form of deposition of testimony of
Harley Delano and Dennis Delano that they asked Neri to make sure
that a new lease of the Fairfax Store under which a new entity
called 2040 Fairfax, Inc. ("2040 FF") would act as tenant in
place of the debtor would be done "legally and properly" and that
they did not have any intention to harm DRP in connection with
the transaction and that Neri proposed to them scenarios which
included a transfer of assets between the debtor and 2040 FF.
Neri does not dispute that DRP and the Delanos relied on him for
legal advice.  The plaintiff has also presented evidence in the
form of deposition testimony of Neri in which Neri states that he
never considered whether the Delanos owed fiduciary duties to the
debtor, he was not familiar with the fiduciary duties of members
of an LLC, and that he did not advise the Delanos or the debtor
to obtain an independent manager or attorney to review the
transaction between the debtor and 2040 FF.  A fact finder or
jury could reasonably conclude from the foregoing that Neri,
without considering whether he owed a duty to the debtor as its
attorney, devised and effectuated a scheme by which the debtor
was divested of assets without consideration, thus causing damage
to the debtor.

1   Based on the foregoing, Neri is not entitled to summary

2   judgment on the plaintiff's claim for breach of fiduciary duty.

3

4   **E.)   Legal malpractice**

5

6   The elements of a claim for legal malpractice under

7   California law are:

8

9   (1) the duty of the attorney to use such skill,

10   prudence, and diligence as members of his or her

11   profession commonly possess and exercise; (2) a breach

12   of that duty; (3) a proximate causal connection between

13   the breach and the resulting injury; and (4) actual

14   loss or damage resulting from the attorney's

15   negligence.

16

17   Coscia v. McKenna & Cuneo, 25 Cal.4th 1194, 1199 (2001).

18

19   The FAC alleges that as attorney for the debtor, Neri owed

20   the debtor a duty to use such skill prudence and diligence as

21   other members of his profession commonly possess and exercise.

22   The FAC alleges that Neri breached those duties by failing to

23   make written disclosure to the debtor of his simultaneous

24   representation of both the debtor and 2040 FF, by failing to

25   obtain the debtor's written consent to the simultaneous

26   representation, by accepting employment adverse to the debtor, by

27

28   - 25 -

disclosing confidential and privileged information belonging to
the debtor, by failing to disclose to the debtor that he did not
have professional liability insurance, by failing to execute a
written fee agreement with the debtor at the time he began to
serve as the debtor's attorney in 2006 and by charging an
"unconscionable" retainer of $500,000.00 when he did enter into a
written fee agreement with the debtor in January, 2011.  The FAC
also alleges that but for Neri's breach of his duties of care,
the debtor would not have entered into the transaction with 2040
FF whereby it transferred its assets to 2040 FF and undertook
obligations for the benefit of 2040 FF for no consideration.

As with the plaintiff's claim for breach of fiduciary duty
Neri argues that the plaintiff cannot show evidence to prove
causation of damages, again pointing to the declarations of
Harley Delano and Dennis Delano, who state that they would have
hired Neri even if he had provided them with disclosures and a
written fee agreement.  Neri also argues that the plaintiff
cannot show evidence to establish what level of skill, prudence
and diligence Neri failed to possess in performing the legal
tasks required of him by the Delanos and the debtor.

The burden shifts to the plaintiff to show a dispute of
material fact.  As with the claim for breach of fiduciary duty,
with respect to Neri's failure to make various disclosures
regarding simultaneous representation his lack of liability
insurance and the absence of a written fee agreement the
plaintiff presents no evidence to show that if these disclosures

had been made and a written fee agreement provided that the
debtor, through the Delanos, would have taken any other action.
On this aspect of the plaintiff's claim for breach of fiduciary
duty, the plaintiff has not carried its burden.

However, the substance of the plaintiff's claim for legal
malpractice does not solely concern Neri's failure to make
disclosures or provide a written fee agreement.  The plaintiff
also accuses Neri of violating a duty of loyalty and care to the
debtor by participating in a scheme to transfer assets of the
debtor to 2040 FF without consideration.  On that aspect of the
plaintiff's claim for breach of fiduciary duty, the court finds
that the plaintiff has submitted sufficient evidence to create a
dispute of material fact.  Specifically, the plaintiff has
presented evidence in the form of deposition of testimony of
Harley Delano and Dennis Delano that they asked Neri to make sure
that a new lease of the Fairfax Store under which a new entity
called 2040 Fairfax, Inc. ("2040 FF") would act as tenant in
place of the debtor would be done "legally and properly" and that
they did not have any intention to harm DRP in connection with
the transaction and that Neri proposed to them scenarios which
included a transfer of assets between the debtor and 2040 FF.
Neri does not dispute that DRP and the Delanos relied on him for
legal advice.  The plaintiff has also presented evidence in the
form of deposition testimony of Neri in which Neri states that he
never considered whether the Delanos owed fiduciary duties to the
debtor, he was not familiar with the fiduciary duties of members

of an LLC, and that he did not advise the Delanos or the debtor
to obtain an independent manager or attorney to review the
transaction between the debtor and 2040 FF.  A fact finder or
jury could reasonably conclude from the foregoing that Neri
devised and effectuated a scheme by which the debtor was divested
of assets without consideration, thus breaching his duty of
prudence and diligence as the debtor's attorney and causing
damage to the debtor.

**F.)  Conversion**

"Conversion is the wrongful exercise of dominion over
the property of another. The elements of a conversion
are the plaintiff's ownership or right to possession of
the property at the time of the conversion; the
defendant's conversion by a wrongful act or disposition
of property rights; and damages. It is not necessary
that there be a manual taking of the property; it is
only necessary to show an assumption of control or
ownership over the property, or that the alleged
converter has applied the property to his own use.
[Citations.]" ( Oakdale Village Group v. Fong (1996) 43
Cal.App.4th 539, 543-544, 50 Cal.Rptr.2d 810.) Money
can be the subject of an action for conversion if a
specific sum capable of identification is involved. (
Weiss v. Marcus (1975) 51 Cal.App.3d 590, 599, 124

1  Cal.Rptr. 297.)

2

3  Farmers Ins. Exchange v. Zerin 53 Cal.App.4th 445, 452 (1997).

4  The FAC alleges that by intentionally orchestrating a scheme

5  under which the debtor would operate the Fairfax Store for the

6  benefit of 2040 FF, and at the same time pay 2040 FF Rent and 25%

7  of the profit from the Fairfax Store, the defendants (presumably

8  including) Neri wrongfully and intentionally exercised control

9  over the debtor's property and that the debtor could not consent

10  to that control because the Delanos and Neri conspired to

11  dominate and control the debtor.

12  Neri argues that the plaintiff cannot show evidence of a

13  wrongful exercise of dominion over the property of the debtor

14  because the debtor, through the Delanos, consented to the

15  transaction between the debtor and 2040 FF and the transfer of

16  $560,000.00 to Neri.   Neri submits the declarations of Harley

17  Delano and Dennis Delano in support, who each state that they, as

18  the sole members of the debtor, authorized the transaction

19  between 2040 FF and the debtor and authorized the debtor to

20  transfer $560,000.00 to Neri's attorney trust account.

21  The plaintiff argues in opposition that the debtor did not

22  consent because it was impossible for the Delanos to consent on

23  behalf of the debtor to a transaction in which they had an

24  interest.   The plaintiff cites California Rule of Professional

25  Conduct 3-600(E) and Forrest v. Baeza, 58 Cal.App.4th 65 (1997).

26  Those authorities, however, concern the dual representation by an

27

28

attorney of a organization and a director, officer, employee, member, shareholder or other constituent of the organization. Those authorities have nothing to do with whether the debtor's consent through the Delanos was ineffective because the Delanos had an interest in the transaction.  The court finds that the plaintiff has not carried its burden of showing that there is a dispute of material fact with respect to the debtor's consent to the transfer of funds to Neri.  Neri is entitled to summary judgment that the plaintiffs shall take nothing by their claim for conversion against Neri.

## III. RECOMMENDATION

For all of the above reasons, IT IS HEREBY RECOMMENDED that Neri's motion for summary judgment be granted in part such that Neri shall have summary judgment that the plaintiff shall take nothing by its claim for relief for conversion, and that it be denied as to Neri's request for summary judgment on the plaintiff's claims for avoidance of fraudulent transfer, breach of fiduciary duty and legal malpractice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 157(c)(1).  Although section 157(c)(1) does not contain the procedural provisions found in 28 U.S.C. § 626(b)(1), the court recommends utilizing the same procedure.  Accordingly, within fourteen days after being served

1   with these findings and recommendations, any party may file

2   written objections with the court and serve a copy on all

3   parties.  Such a document should be captioned "Objections to

4   Bankruptcy Judge's Report and Recommendation."  Failure to file

5   objections within the specified time may waive the right to

6   appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d

7   449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

8   Cir. 1991).

9

10  Dated: September 29, 2014

11                              _____

12                              Thomas C. Holman
                                United States Bankruptcy Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              - 31 -